```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

Nicholas R. Mattox,              :

        Plaintiff,               :

     v.                          :    Case No. 2:14-cv-1350

                                 :    JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,      Magistrate Judge Kemp

        Defendant.               :
```

                    REPORT AND RECOMMENDATION

                         I.  Introduction

     Plaintiff, Nicholas R. Mattox, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on August 3, 2011, and alleged that Plaintiff became disabled on June 1, 2010.

      After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on January 17, 2013.  In a decision dated May 28, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on June 24, 2014, when the Appeals Council denied review.

     After Plaintiff filed this case, the Commissioner filed the administrative record on November 7, 2014.  Plaintiff filed his statement of specific errors on December 11, 2014, to which the Commissioner responded on February 14, 2015.  No reply brief has been filed, and the case is now ready to decide.

          II.  The Lay Testimony at the Administrative Hearing

     Plaintiff, who was 39 years old at the time of the administrative hearing and who has a ninth grade education, testified as follows.  His testimony appears at pages 32-44 of the administrative record.

Plaintiff was brought to the hearing by his mother, who was his sole source of support. He testified that for a number of years, he had done drywall work, but his chronic fatigue and depression now prevent him from doing that. He had attempted to get his GED but found himself unable to retain any information. He got medication for his sleep disorder but still had such bad headaches that he could not get to work on time or do his work properly.

Describing his sleep disorder, Plaintiff said that he may go three or four days without sleeping. He had been to a neuropsychologist for evaluation, and she had recommended that he see other specialists, but he could not afford to do so.

On a daily basis, Plaintiff might attempt to sleep if he had not done so for several days. When he did sleep, he slept for several days. After a full day of not sleeping, he would not feel safe driving or leaving the house. He might walk on a treadmill to try to tire himself out, but he did not read or socialize. His condition had worsened in the past few years.

Carol Sue Drummond, Plaintiff's mother, also testified at the hearing. Plaintiff had hypoxia at birth and was a very difficult child with behavior and discipline problems. He struggled in school. She confirmed his difficulty trying to retain information for the GED exam. She also said that even though Plaintiff lived on his own from time to time he did not function well. She did many things for him during those times. She also stated that his sleep disorder had gotten progressively worse. Even before, he could work only if he was around people he knew well, and in a situation where he could miss work without suffering consequences. He had never been able to work in a structured environment. She also testified that he kept to himself when family members came to visit and that he had no social skills at all. (Tr. 44-49).

III.  The Medical Records

The medical records in this case are found beginning on page 237 of the administrative record. The pertinent records - those relating to Plaintiff's two statements of error - can be summarized as follows.

Plaintiff underwent a comprehensive psychological examination on December 24, 2007, after being admitted to the hospital because he had been engaging in threatening behavior. He was taking Prozac and Seroquel at the time and was also drinking heavily (although mostly on the weekends). He was taking the Seroquel to help him sleep. He had undergone court-ordered substance abuse treatment. The diagnoses included a depressive disorder and various substance abuse disorders. His GAF on admission was rated at 30. He was discharged four days later with a recommendation that he obtain counseling. By then, his GAF had improved to 60. (Tr. 239-46).

Notes from Dr. Lloyd, Plaintiff's family doctor, show that during 2011 Plaintiff reported extreme difficulty concentrating and focusing (Tr. 273) and that he was being prescribed Wellbutrin and Seroquel for an affective psychosis and ADHD. He was also recommended for a neuropsychological examination. (Tr. 277). Other symptoms he reported included fatigue, shortness of breath, and disturbances of thinking. His physical exams were generally normal.

Dr. Della Mora performed a comprehensive neuropsychological examination of Plaintiff about which she reported to Dr. Lloyd in a letter dated July 2, 2011. She first noted that Plaintiff had suffered hypoxia at birth and again due to drug overdoses. He also had a concussion in a car accident at age 22. He had been sober for three years, but admitted to significant substance abuse between ages 25 and 34. He described problems with auditory comprehension, word finding, slurred and stuttered

speech, reading comprehension, managing finances, attention and concentration, learning, short-term memory, and problem solving abilities. He disliked being around people. He had been in special education in middle school.

    Dr. Della Mora next described the testing she did and noted that during testing, Plaintiff was cooperative and motivated but may not have put forth his full effort on some tests (but she attributed that to "the level and chronicity of his psychiatric distress" and not to conscious or deliberate malingering). He struggled most with auditory attention, verbal conceptualization, attention to visual detail, and complex psychomotor speed involving working memory. His auditory working memory was moderately to severely impaired. Written expression and listening comprehension were also severely impaired. He also had problems sustaining concentration and his immediate and delayed memory were severely impaired as well. Dr. Della Mora also noted objective evidence of severe depression and anxiety. These conditions interfered with his cognitive functioning and undermined his functional status.

    Summing up all of these results, Dr. Della Mora said that Plaintiff could not return to gainful employment and was permanently disabled. She suggested a number of other tests as well as consultation with a sleep medicine specialist "in light of the magnitude and chronicity of his sleep difficulties." She said that if his neurobehavioral difficulties improved, he might be a candidate for employment. (Tr. 355-59).

    Finally, the record was reviewed by state agency physicians. Dr. Lewin, a psychologist, concluded that Plaintiff could work in a low pressured work environment where duties were routine and that he could interact superficially with others. He could also follow 1-3 step instructions. Dr. Lewin appeared to reject Dr. Della Mora's opinion because "statements given by Dr. Mora are

reserved for the commissioner of SSA." (Tr. 70-73). Another reviewer, Dr. Hill, concluded that Plaintiff suffered from severe organic mental, affective, and anxiety-related disorders, made the same observation about Dr. Della Mora's opinion as did Dr. Lewin, and noted that Plaintiff should work in an environment with no more than occasional changes to routine and where changes could be explained and he had time to process them. Also, he should avoid jobs with strict time or production demands. (Tr. 84-88).

### IV. The Vocational Testimony

George Coleman III was the vocational expert in this case. His testimony can be found at pages 49-54 of the administrative record.

Mr. Coleman was asked to categorize Plaintiff's past work. He said that his only job was that of drywall sander, a job which is either light or medium and unskilled. If he performed it as he and his mother described, because of his intermittent attendance, it would not qualify as substantial gainful activity but as an accommodated work setting.

Mr. Coleman was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level but who was limited to routine assignments no greater than three steps and who worked best with minimal interactions from others. Mr. Coleman gave examples of three jobs that such a person could perform, including hand packer, bench assembler, and warehouse checker.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 13-23 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff

-5-

met the insured status requirements of the Social Security Act through June 30, 2011.  Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 1, 2010.  Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including depression, anxiety, a learning disorder, and a sleep disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level but that he was limited to routine assignments with no greater than three steps and worked best in isolation with minimal interaction with others.  He was able to remember locations and work-like procedures.

The ALJ next concluded that Plaintiff had no past relevant work.  However, he also determined that Plaintiff could do certain jobs identified by the vocational expert, including hand packager, bench assembler, and warehouse checker.  The ALJ further found that such jobs existed in significant numbers in the local and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

### VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred in failing to accord proper weight to Dr. Della Mora's opinion; and (2) substantial evidence does not support a finding that Plaintiff can perform sustained work activities.  These issues are evaluated under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C.

Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Dr. Della Mora's Opinion

Plaintiff's first assigned error relates to the ALJ's decision not to credit Dr. Della Mora's opinion about Plaintiff's ability to work. Plaintiff points out that Dr. Della Mora is a specialist whose opinions are usually entitled to more weight than those of non-specialists, and that the ALJ relied on incorrect factors in giving her opinion little weight. He specifically notes that no other examining or treating source contradicted her findings. In response, the Commissioner argues

that the reasons given by the ALJ were sufficient.

The ALJ said the following about Dr. Della Mora's report:

> Dr. Della Mora does not have a longitudinal treating relationship with the claimant.... With not having a treating relationship, she based her opinion primarily on the claimant's subjective complaints and testing results, which she even indicated should be interpreted with caution.  The vague and conclusory opinion is not supported by evidence of record.  Additionally, Dr. Della Mora speaks to issues that are reserved to the Commissioner....  Therefore, the undersigned gives this opinion little weight.

(Tr. 20-21).  The ALJ then purported to accept and adopt the opinions of the state agency experts, Drs. Lewin and Hill, as "consistent with the medical evidence of record."  (Tr. 21).  Interestingly, the ALJ did not summarize either of those opinions, and there are fairly significant inconsistencies between his RFC assessment and theirs; for example, the ALJ made no mention of any restriction to a low-pressured work environment, something present in Dr. Lewin's restrictions, nor to a similar restriction (no jobs with strict production or time demands) described by Dr. Hill.

The Court agrees with Plaintiff that the record does not support the reasons given by the ALJ for rejecting Dr. Della Mora's opinions.  It is simply too conclusory to say that because a neuropsychologist (or any other mental health professional) places some weight on the patient's description of his or her symptoms, any such opinion is automatically suspect.  In fact, Dr. Della Mora did an extensive amount of testing and observing, as stated in her report, and appears to have relied very little on uncorroborated statements of symptoms made by Plaintiff.

As to the testing results, Dr. Della Mora did say they were somewhat questionable, but she attributed that to Plaintiff's underlying psychological conditions, and there is no evidence to the contrary.  Again, she was fully aware of the need to evaluate

some of the test results more critically due to that factor, but she still reached conclusions based on the totality of her testing and observations, and the ALJ was not free to substitute his judgment for hers as to the validity of those conclusions.

Finally, although Dr. Della Mora did make a statement about employability, that is not the crux of her opinion. She described many specific functional limitations which the ALJ does not discuss at all, such as problems with word memory, motor functioning, concept formation, problem solving, speed of information processing, semantic fluency, and working memory. Even the state agency reviewers credited these findings to some extent by suggesting pace-based restrictions, and, again, there is no contradictory evidence to support the ALJ's decision that no such restrictions exist. This is, to some extent, an Ealy problem (see Ealy v. Comm'r of Social Security, 594 F.3d 504 (6th Cir. 2010)) because, as in that case, the record supports the proposition "that speed of [Plaintiff's] performance could not be critical to his job." Id. at 516. This limitation should have been conveyed to the vocational expert, but was not. For all these reasons, the case should be remanded for a more thorough consideration of Dr. Della Mora's report and of the opinions expressed by the state agency reviewers.

### B. Employment

Plaintiff's second claim of error is that the ALJ failed to factor many limitations into his residual functional capacity finding. Those limitations found in Dr. Della Mora's report are addressed above and need not be discussed here. Plaintiff also argues, however, that his sleep disorder and fatigue, which the ALJ found to be severe, imposed work-related limitations which the ALJ did not mention in the hypothetical questions posed to the vocational expert nor include in his RFC finding. The Commissioner responds to this claim by stating only that "[t]he evidence does not support Plaintiff's allegations of additional

limitations." Memorandum in Opposition, Doc. 13, at 11.

Here, the ALJ specifically found Plaintiff's sleep disorder to be a severe impairment, meaning that, by definition, it imposed more than slight limitations on the Plaintiff's ability to do work-related activities. See 20 C.F.R. §404.1521(a). But the ALJ does not appear to have included any functional limitations from the sleep disorder into his RFC finding. Here, as in Olilla v. Colvin, 2014 WL 7238128, *3 (W.D. Mo. Dec. 17, 2014), the Commissioner "neither cites record evidence resolving this patent inconsistency, nor explains whether the inconsistency amounts to harmless error." This is also an issue which should be addressed on remand.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the

Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

>                                     /s/ Terence P. Kemp
>                                     United States Magistrate Judge